IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| LEROY O. CARLSON, and | ) | 4:11CV3173 |
| TERESA J. CARLSON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **MEMORANDUM** |
| v. | ) | **AND ORDER** |
| | ) | |
| CREDIT MANAGEMENT | ) | |
| SERVICES, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on Plaintiffs' Motion for Leave to File an Amended Complaint (filing no. 19) and Defendants' Motion to Dismiss (filing no. 14). Defendants have filed a Brief in Support of their Motion to Dismiss arguing that Plaintiffs' Complaint and proposed amended complaint fail to state a claim upon which relief may be granted. (Filing No. 20.) Defendants have also filed Indices of Evidence in Support of their Motion to Dismiss that include Affidavits from Tessa Hermanson and verified documents referenced in Plaintiffs' Complaint and proposed amended complaint. (Filing Nos. 16 and 21.) Plaintiffs have filed a Response to Defendants' Motion to Dismiss. (Filing No. 23.) For the reasons discussed below, Defendants' Motion to Dismiss is granted.

**I.   BACKGROUND**

Defendant Credit Management Services ("CMS") is a debt collection firm. (Filing No. 19-1 at CM/ECF p. 2.) Plaintiffs' proposed amended complaint alleges that CMS contacted them on three separate occasions. (*Id*. at CM/ECF pp. 1-8.) The first occurred in late November 2010, when CMS sent Plaintiffs five notices that Faith Regional Health Services ("FRHS") had referred a "past due" account to CMS for collection. (Filing No. 16-1 at CM/ECF pp. 3-7.) The principal amounts due in

these five notices were $1,620.00, $235.40, $175.00, $130.00, and $140.00. (*Id*.) Each notice specifically stated:

> Your past due account has been referred to us for collection. Failure to pay may result in further collection efforts.
>
> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.
>
> Credit Management Services, Inc. is a collection agency attempting to collect a debt. Any information obtained may be used for that purpose.

(*Id*.)

On December 16, 2011, CMS received a letter from Plaintiff LeRoy Carlson disputing the debt and requesting verification. (Filing No. 19-1 at CM/ECF p. 3; Filing No. 16-1 at CM/ECF pp. 8-10.) On January 28, 2011, CMS sent Plaintiff LeRoy Carlson a verification letter with enclosed statements and contracts for the FRHS accounts turned over to CMS for collection. (Filing No. 21-2 at CM/ECF p. 1.) The enclosed statements were copies of FRHS demand bills for Plaintiff Teresa J. Carlson and the enclosed contracts were Patient Service Agreements between FRHS and Plaintiff Teresa J. Carlson. (*Id*. at CM/ECF pp. 2-10; Filing No. 21-3; Filing No. 21-4; Filing No. 19-1 at CM/ECF p. 3.) The verification letter stated that the underlying principal amount due was $2,285.40. (Filing No. 21-2 at CM/ECF p. 1.) On September 12, 2011, Plaintiffs were served with a summons and complaint filed in the County Court of Madison County, Nebraska, alleging that Plaintiffs were

2

indebted to CMS for the FRHS accounts. (Filing No. 19-1 at CM/ECF p. 5; Filing No. 21-5 at CM/ECF pp. 1-4.)

Plaintiffs filed their Complaint in this matter on October 12, 2011. (Filing No. 1.) Thereafter, Defendants filed a Motion to Dismiss. (Filing No. 14.) In response, and in agreement that their original Complaint was deficient, Plaintiffs filed a Motion to Amend and a proposed amended complaint. (Filing Nos. 19 and 19-1.) Because Plaintiffs argue that the proposed amended complaint corrects the deficiencies in their original Complaint, the court will consider the allegations contained in Plaintiffs' proposed amended complaint when considering Defendants' Motion to Dismiss.

## II.   ANALYSIS

In their proposed amended complaint, Plaintiffs allege that Defendants violated the Fair Debt Collection Practices Act ("FDCPA") by (1) falsely representing the character, amount or legal status of the alleged debts, (2) failing to establish that CMS was a "party in interest" in the proceeding initiated in the County Court of Madison County, Nebraska, (3) using unconscionable means to collect an alleged debt, and (4) continuing collection activity after failing to provide proper legal validation of the alleged debt. (Filing No. 19-1 at CM/ECF pp. 8-9.) Defendants argue that their actions did not violate that FDCPA and that the court should not permit Plaintiffs to file their proposed amended complaint because it would be futile. (Filing No. 20.)

### A.   Motion to Dismiss Standard

A pro se plaintiff must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed" for failing to state a claim upon which relief can be granted. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

3

liable for the misconduct alleged."). Regardless of whether a plaintiff is represented or is appearing pro se, the plaintiff's complaint must allege specific facts sufficient to state a claim. *See Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985). However, a pro se plaintiff's allegations must be construed liberally. *Burke v. North Dakota Dep't of Corr. & Rehab.*, 294 F.3d 1043, 1043-44 (8th Cir. 2002) (citations omitted).

### B. FDCPA Claims

"The FDCPA is designed to protect consumers from abusive debt collection practices and to protect ethical debt collectors from competitive disadvantage." *Peters v. Gen. Serv. Bureau, Inc.*, 277 F.3d 1051, 1054 (8th Cir. 2002) (citing 15 U.S.C. § 1692e). With this background in mind, the court will analyze Plaintiffs' FDCPA claims in two general categories: (1) claims relating to the verification of Plaintiffs' debt and (2) claims relating to Defendants' use of false representations and unauthorized means to collect Plaintiffs' debt.

#### 1. *Claims Relating to the Verification of Plaintiffs' Debt*

Plaintiffs claim that Defendants failed to adequately verify their debt under 15 U.S.C. § 1692g because they never provided a "verified ledger statement" that Plaintiffs requested in their letter disputing the debt. (Filing No. 19-1 at CM/ECF pp. 3-4, 9.) The Eighth Circuit recently addressed the issue of verification under the FDCPA in *Dunham v. Portfolio Recovery Assocs., LLC.*, 663 F.3d 997, 1003 (8th Cir. 2011). In *Dunham*, the Circuit referred to the often-cited Fourth Circuit case, *Chaudhry v. Gallerizzo*, 174 F.3d 394 (4th Cir. 1999). *Id*. In *Chaudhry*, the court resolved the verification requirement in no uncertain terms, holding that:

> "[V]erification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed; the debt collector is not required to keep

4

> detailed files of the alleged debt. . . . Consistent with the legislative history, verification is only intended to eliminate the problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid. . . . There is no concomitant obligation to forward copies of bills or other detailed evidence of the debt.

*Chaudhry*, 174 F.3d at 406 (citations and quotations omitted). Relying on this determination, the Fourth Circuit affirmed the denial of relief to the consumer and agreed with the district court's finding that "verification only requires a debt collector to confirm with his client that a particular amount is actually being claimed, not to vouch for the validity of the underlying debt." *Id.* Thus, where a debt collector provided no detailed information underlying the debt, but instead provided basic information restating the amount owed by the consumer and stating that the amounts were correct, the FDCPA verification requirement was met. *Id.*

Noting that "[t]he statute does not detail what information must be included in the verification," the Tenth Circuit has also agreed with the Fourth Circuit regarding verification requirements. Relying on *Chaudhry*, the Tenth Circuit held that, 15 U.S.C. § 1692g "is not intended to give a debtor a detailed accounting of debt to be collected." *Maynard v. Cannon*, No. 08-4181, 2010 WL 4487113, at *6 (10th Cir. Nov. 10, 2010). Because the debt collector "correctly identified the original loan and the original lender," the debt collector did "all that § 1692g required it to do" and the consumer was not entitled to relief even though the consumer sought additional information relating to the underlying debt. *Id.*

Here, Plaintiffs allege they received five notices informing them that FRHS had referred a "past due" account to CMS for collection. (Filing No. 16-1 at CM/ECF pp. 3-7.) Each notice informed Plaintiffs of the debt owed and the name of the creditor. (*Id.*) Each notice also set forth Plaintiffs' right to dispute the debt and request verification, which Plaintiffs did on December 16, 2010. (*Id.*; Filing No. 19-1 at

5

CM/ECF p. 3; Filing No. 16-1 at CM/ECF pp. 8-10.) On January 28, 2011, CMS sent Plaintiff LeRoy Carlson a verification letter with enclosed statements and contracts for the accounts FRHS turned over to CMS for collection. (Filing No. 21-2 at CM/ECF p. 1.) The enclosed statements were copies of FRHS demand bills for Plaintiff Teresa J. Carlson and the enclosed contracts were Patient Service Agreements between FRHS and Plaintiff Teresa J. Carlson. (*Id*. at CM/ECF pp. 2-10; Filing No. 21-3; Filing No. 21-4; Filing No. 19-1 at CM/ECF p. 3.) The verification letter stated that the underlying principal amount due was $2,285.40. (Filing No. 21-2 at CM/ECF p. 1.)

Summarized, CMS attempted to collect a debt from Plaintiffs and informed Plaintiffs that they had a right to dispute the validity of the debt and request verification. Plaintiffs requested verification of the debt, and CMS sent Plaintiffs copies of statements and contracts for the accounts FRHS turned over to CMS for collection. Importantly, Plaintiffs do not dispute that the FRHS account was their account and do not allege that they previously paid the debt in full. Thus, while CMS did not provide the "verified ledger statement" that Plaintiffs believe is required to adequately verify the debt, CMS sent enough information to show that it was not attempting to collect the debt from "the wrong person" or attempting "to collect debts which the consumer has already paid." *Chaudhry*, 174 F.3d at 406. The court finds that, in light of the authority set forth above, the allegations in Plaintiffs' Complaint and proposed amended complaint, as well as the documents referenced therein, show that CMS adequately informed Plaintiffs of their right to dispute and obtain verification of the alleged debt and then adequately verified Plaintiffs' debt. As such, Plaintiffs' allegations of inadequate verification under 15 U.S.C. § 1692g fail to state a claim upon which relief may be granted.

> 2. *Claims Relating to CMS's Use of False Representations and Unauthorized Means to Collect Plaintiffs' Debt*

Plaintiffs also assert four claims relating to CMS's use of false representations and unauthorized means to collect their debt. (Filing No. 19-1 at CM/ECF pp. 8-9.) First, Plaintiffs claim that Defendants used unauthorized means to collect the debt because they continued collection activity "after receiving notice of dispute." (*Id*. at CM/ECF p. 9.) After a consumer disputes a debt, the FDCPA requires a debt collector to cease collection of the debt *until* the debt collector verifies the debt. *See* 15 U.S.C. § 1692g(b) (stating "the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt"). As set forth above, Defendants adequately verified Plaintiffs' debt. Therefore, Plaintiffs' FDCPA claim relating to CMS's continued collection activity after CMS received Plaintiffs' "notice of dispute" fails to state a claim upon which relief may be granted.

Second, Plaintiffs allege that CMS used deceptive means to collect the debt by filing a complaint in the County Court of Madison County, Nebraska, without providing evidence that CMS was "the party in interest." (Filing No. 19-1 at CM/ECF p. 9.) Stated another way, Plaintiffs allege that CMS needed to offer proof that it owned the debt at the time that it filed the state court complaint. This claim lacks merit. *See, e.g., Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 333 (6th Cir. 2006) (concluding that a debt collector that filed a debt collection lawsuit without the immediate means of proving the existence, amount, or true owner did not violate the FDCPA).

Third, Plaintiffs allege that Defendants falsely represented the amount of the debt because the initial communication from CMS listed a different amount than later communications. (Filing No. 19-1 at CM/ECF p. 8.) The Eighth Circuit has held that "[i]n evaluating whether a debt collection letter is false, misleading, or deceptive in violation of § 1692e, the letter must be viewed through the eyes of an unsophisticated consumer." *Peters*, 277 F.3d at 1055. Such a test protects "consumers of below average sophistication or intelligence," but also contains an "objective element of

reasonableness . . . that prevents liability for bizarre or idiosyncratic interpretations of collection notices." *Id.*; *see also Strand v. Diversified Collection Serv., Inc.*, 380 F.3d 316, 317-18 (8th Cir. 2004) ("This standard protects the uninformed or naive consumer, yet also contains an objective element of reasonableness to protect debt collectors from liability for peculiar interpretations of collection letters.").

Here, CMS initially sent Plaintiffs five notices listing principal amounts due of $1,620.00, $235.40, $175.00, $130.00, and $140.00, for a total amount of $2,300.40. (Filing No. 16-1 at CM/ECF pp. 3-7.) Thereafter, CMS sent Plaintiff LeRoy Carlson a verification letter stating that the underlying principal amount due was $2,285.40. (Filing No. 21-2 at CM/ECF p. 1.) Finally, CMS filed a complaint in the County Court of Madison County, Nebraska, requesting judgment "in the amount of $2,285.40, plus the costs of [the] action, prejudgment interest, attorneys' fees if applicable, and post-judgment interest if allowed by law." (Filing No. 19-1 at CM/ECF p. 5; Filing No. 21-5 at CM/ECF pp. 1-4.) This complaint states, under "Cause I," that the $1,620.00 account was credited with a payment and "there remains a total sum of $1,605.00." (Filing No. 21-5 at CM/ECF p. 1.)

Overall, the initial notices that CMS sent to Plaintiffs totaled a principal amount $15.00 greater than what CMS verified and then later requested as a judgment in the County Court of Madison County, Nebraska (i.e. $2,300.40 - $2,285.40 = $15.00). This difference is related to a payment that was received on the $1,620.00 bill, thereby reducing that bill's principal amount to $1,605.00. (*See Id*. at CM/ECF p. 1.) The court does not agree that this information was false or misleading. Rather, the initial notices, the verification letter and the County Court of Madison County, Nebraska, complaint all clearly stated the principal amount due at the time that they were either sent or filed. The court finds that Plaintiffs have failed to state a claim against CMS for falsely representing the amount of the debt under 15 U.S.C. § 1692e.

Fourth, Plaintiffs allege that CMS's use of the words "turned over" in the verification letter was false or misleading. (Filing No. 19-1 at CM/ECF pp. 3-4.) Plaintiffs are referring to a sentence that specifically states: "Enclosed please find itemized statements and contracts from the following creditors on the account(s) *turned over* to Credit Management Services, Inc., for collection." (Filing No. 21-2 at CM/ECF p. 3 (emphasis added).) The letter then lists FRHS as the creditor and states: "CREDIT MANAGEMENT SERVICES, INC. IS A COLLECTION AGENCY ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE." (*Id*.) When the verification letter is read as a whole, Plaintiffs cannot reasonably claim that the words "turned over" were false or misleading. The letter clearly asserted that FRHS was the creditor and that CMS was a collection agency. *See Peters*, 277 F.3d at 1055 (explaining that the unsophisticated consumer test contains an "objective element of reasonableness . . . that prevents liability for bizarre or idiosyncratic interpretations of collection notices"). Thus, all of Plaintiffs' FDCPA claims relating to Defendants making false representations or using unauthorized means to collect a debt fail to state a claim and are dismissed.

### C. State Law Claims

Plaintiffs also allege that Defendants violated Nebraska state law. (Filing No. 19-1 at CM/ECF p. 9; Filing No. 1 at CM/ECF p. 5.) The court declines to exercise supplemental jurisdiction over such claims because it has dismissed all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3). However, the court will dismiss Plaintiffs' state law claims without prejudice to reassertion in the proper forum.

IT IS THEREFORE ORDERED that:

9

1. Plaintiffs' Motion for Enlargement of Time to Answer Defendants' Motion to Dismiss (filing no. 22) is granted and the Response filed on February 22, 2012, is deemed timely filed.

2. Defendants' Motion to Dismiss (filing no. 14) is granted and Plaintiffs' claims are dismissed without prejudice.

3. Plaintiffs' Motion for Leave to File an Amended Complaint (filing no. 19) is denied because amendment would be futile.

4. A separate judgment will be entered in accordance with this Memorandum and Order.

DATED this 14th day of March, 2012.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.